# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: T.J.**

**No. 14-0477** (Tyler County 12-JA-1)

**FILED**

September 22, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother, by counsel Elmer Earl Bowser Jr., appeals the Circuit Court of Tyler County's May 1, 2014, order terminating her parental rights to T.J. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, David C. White, filed a response on behalf of the child supporting the circuit court's order. Petitioner filed a reply. On appeal, petitioner alleges that the circuit court erred in finding aggravated circumstances existed below, in terminating her parental rights without allowing her an improvement period, and in finding that she lacked the mental capacity to properly parent the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2012, the DHHR received a referral alleging that the eleven-year-old child, T.J., disclosed to Tyler County Sheriff's Deputy J.L. Richardson that his penis hurt because his mother, petitioner herein, had been biting it. Prior to that, the child told his teacher that his penis was swollen "because of mom's teeth," and an aide observed swelling consistent with the child's disclosures. Three days after this referral, the DHHR filed an abuse and neglect petition based on T.J.'s allegations. According to a later psychological evaluation, the child suffers from pervasive developmental disorder, severe mental retardation, and seizure disorder, resulting in his functioning on the approximate level of a two-year-old.

In February of 2012, the DHHR filed an amended petition to include allegations of J.T.'s inappropriate sexual knowledge and behaviors, including grabbing the breasts and buttocks of teachers and staff, repeatedly masturbating while using the bathroom, and making gestures that mimic sexual intercourse. The amended petition also included allegations against petitioner of inappropriate discipline, failure to provide adequate supervision, and a lack of parenting skills. That same month, the circuit court granted the guardian ad litem's motion to terminate petitioner's visitation with J.T.

The following month, petitioner underwent a psychological evaluation with Dr. Edward Baker, who found petitioner to be functioning in the borderline range of intelligence. Dr. Baker

1

also found petitioner's responses to the Child Abuse Potential Inventory to be invalid due to an elevated lie scale. Specifically, he stated that petitioner "tends to minimize [her child's] behavior and takes no responsibility." At the adjudicatory hearing in June of 2012, petitioner stipulated to allegations of inappropriate discipline and improper supervision, among other allegations, but denied the allegations of sexual abuse and blamed her deceased husband for teaching the child to grab women inappropriately. Thereafter, in August of 2012, petitioner presented evidence on her motion for a post-adjudicatory improvement period, which the circuit court denied by order entered on April 4, 2013.

The circuit court held dispositional hearings on July 18, 2013, and August 22, 2013. During the hearings, the circuit court heard testimony from multiple witnesses, including T.J.'s adult half-brother, a DHHR employee, T.J.'s foster mother, and petitioner. The circuit court thereafter terminated petitioner's parental rights to the child. It is from the dispositional order that petitioner now appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court finding aggravated circumstances existed, denying petitioner an improvement period, and terminating her parental rights to T.J.

In regard to petitioner's first assignment of error, the Court does not agree that the circuit court lacked sufficient evidence to find aggravated circumstances due to sexual abuse. Pursuant to West Virginia Code § 49-6-5(a)(7)(A), the DHHR "is not required to make reasonable efforts to preserve the family if the court determines . . . [t]he parent has subjected the child . . . to aggravated circumstances which include, but are not limited to, abandonment, torture, chronic abuse and sexual abuse[.]" Petitioner's argument on this issue is premised upon the fact that the circuit court made no findings concerning the allegations that petitioner sexually abused her son at the adjudicatory hearing. However, this argument ignores the fact that at adjudication, petitioner stipulated to inappropriate discipline, failure to provide adequate supervision, lack of parenting skills, and failure to obtain proper medical treatment, while denying the allegations of sexual abuse. Therefore, the sexual abuse allegations were not relevant to petitioner's

2

adjudication as an abusing parent, and the adjudicatory order, accordingly, contained no findings in regard to these allegations.

However, petitioner's stipulated adjudication did not prevent the circuit court from hearing further evidence on these allegations, and the record clearly shows that the circuit court had sufficient evidence to make its finding at the dispositional hearing. In the dispositional order, the circuit court specifically found that the DHHR "was not required to make reasonable efforts to preserve the family unit herein, inasmuch as the amended petition alleged several instances of sexual abuse," and went on to state that while petitioner continued to deny these allegations, "it is clear . . . at a minimum that the child has been subjected to inappropriate sexual conduct which [petitioner] did nothing to prevent or limit." Further, the circuit court noted the delicate situation regarding T.J., "a child who is unable to adequately express himself with the mind of a two-year[-]old who acts out in a sexual manner . . . ." Based upon all of these factors, the circuit court noted that it was "justified in using extreme caution to protect [T.J.'s] interests . . . ."

We have previously held that "'[t]he standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof.' Syl. Pt. 6, *In re: Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973)." Syl. Pt. 3, *In re Jessica M.*, 231 W.Va. 254, 744 S.E.2d 652 (2013). The record shows that the circuit court's findings, as outlined above, were supported by substantial evidence. This includs the child frequently exhibiting sexualized behaviors and his disclosure that his mother had bitten his penis. Testimony also established other sexualized behavior between petitioner and T.J., including her kissing the child with an open mouth while he "grab[bed] her breasts, grab[bed] her crotch, [and] grab[bed] her butt," and that the child would stick his head between petitioner's legs and into her "crotch area." According to testimony, petitioner did nothing to limit these behaviors. Additionally, following the child's first visitation with petitioner after being placed in foster care, he returned to the foster home upset and cried inconsolably all night. His foster mother testified that T.J. then took a stuffed animal, placed it near his penis, and said "bite, bite," a behavior he repeated the next day.

Further testimony established other behavior by petitioner that supports the circuit court's finding. One of T.J.'s teachers testified that, upon calling petitioner to introduce herself prior to T.J.'s enrollment at her school, petitioner immediately asked her if the school system had insurance in case her son was molested at school. Additionally, after T.J. underwent speech therapy and made progress with his communication, petitioner made an unsolicited call to the teacher and informed her that the child might tell them that petitioner had been sitting in his lap naked and bouncing on him. According to petitioner, Child Protective Services had previously coached T.J. to say this. While it is true that the psychologist who evaluated T.J. could not definitively state that the child had been sexually abused due to his intellectual and communication limitations, this does not limit the circuit court's ability to find aggravated circumstances. Upon our review, the Court finds that the circuit court had substantial evidence upon which to make this finding and did not err in this regard.

As to petitioner's second assignment of error, we find that the circuit court did not err in denying petitioner an improvement period. Pursuant to West Virginia Code § 49-6-12, circuit courts have discretion to grant improvement periods when the parent "demonstrates, by clear and

3

convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . ." The record here is clear petitioner could not satisfy this burden. Petitioner's only evidence in support of her assertion that she was likely to fully participate in an improvement period was her own testimony. Conversely, the circuit court heard ample testimony concerning petitioner's refusal to accept responsibility for the abuse in the home. Specifically, one of T.J.'s teachers testified that petitioner "was not open to suggestions at all with regard to the inappropriate behaviors being exhibited by [T.J.] . . . ." The evidence below established that petitioner did not "sufficiently apprehend[] her own failures [as] a parent," or "the depth of the child's special needs" and the associated care he required. Specifically, petitioner "minimize[d] her shortcomings and [was] more or less defiant in her unwillingness to recognize that her parenting style is insufficient to support the child's needs." As such, it is clear that petitioner could not satisfy the burden necessary to obtain an improvement period, and the Court finds no error in the circuit court denying the same.

Finally, the Court finds no error in the circuit court terminating petitioner's parental rights. Specifically, petitioner argues that it was error to base termination upon the finding that she lacks the mental capacity to properly parent the child. According to petitioner, Dr. Edward Baker, who completed her psychological evaluation, did not reach this conclusion in his report, nor was he called to testify or subject to cross-examination. However, the Court finds no merit to this argument. The circuit court specifically found that petitioner "lacks the mental capacity to properly parent this child with special needs, based on the opinions of Dr. Edward Baker and her own testimony, as well as the demonstrated improvement in the condition of the child since removal." The record shows that petitioner did not object to the introduction of Dr. Baker's report into evidence. Further, there is no requirement that Dr. Baker provide testimony in this regard. Most importantly, though, is the fact that the circuit court based its finding on evidence from multiple sources, not simply the report.

In reaching this conclusion, the circuit court considered multiple factors, including Dr. Baker's assessment that petitioner's Child Abuse Potential Inventory was not assessable because of her deceptive answers. Dr. Baker indicated that petitioner's deceptive answers "suggest[ed] that she is not likely to admit any problems or concerns to which others may admit." This evaluation, while stopping short of an opinion on petitioner's mental capacity, provided the circuit court with information related to petitioner's ability to address the underlying issues of abuse in the home. Further, petitioner's own testimony, and her behaviors that others testified to, support the circuit court's finding. Aside from the behaviors addressed above, the circuit court was also presented with evidence that petitioner continually minimized the child's health when contacted by his school. This included providing unfounded explanations for the child's various ailments, such as stating that the child was faking a fever to "pull[] one over on [the school]," or that the fever was caused by the child consuming a "snack cake" and a soda.

Finally, the circuit court's finding was supported by the vast improvements T.J. made in foster care. After eleven years in petitioner's care, T.J. continued to exhibit difficulties with communication and other aspects of his daily life, requiring assistance to eat, drink, use the bathroom, and even walk. Further, petitioner testified that the child routinely suffered thirty to fifty seizures per month. Since being in foster care, the child has had approximately two to three seizures per week. Additionally, T.J. can now use the restroom, sometimes unprompted. Further

testimony established that, while in foster care, T.J. improved in his ability to feed himself and walk on his own. As such, the evidence is clear that petitioner lacked the mental capacity to properly care for the child, especially in light of the fact that she refuses to acknowledge that her parenting style is insufficient. Thus, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination of her parental rights was necessary for the child's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon these findings.

For the foregoing reasons, we find no error in the decision of the circuit court and its May 1, 2014 order is hereby affirmed.

Affirmed.

**ISSUED**: September 22, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

5